UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS E. ASHLEY,

    Plaintiff,

v.                                          Case No. 1:12-cv-1287
                                              Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on October 31, 1961 (AR 154).[1] He alleged a disability onset date of May 22, 2009, and was insured for benefits through September 30, 2010 (AR 21, 153-54).[2] Plaintiff completed the 11th grade and had previous employment as a forklift operator, janitor, machine operator, a racker (automotive manufacturing), press operator and construction worker (AR 57-68, 159, 164). Plaintiff identified his disabling conditions as: rheumatoid arthritis in shoulders, neck and arms; uncontrolled diabetes since 2005; frozen shoulders; and a blood clot in the left leg (being monitored as of August 2009) (AR 158). The administrative law judge (ALJ) reviewed

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Plaintiff had originally alleged a disability onset date of July 2, 2007 (AR 154), which was later amended to May 22, 2009. The amendment appears as Exhibit 6D (AR 153). The Court notes that the ALJ's decision refers to this document as Exhibit 9D (AR 19).

plaintiff's claim *de novo* and entered a written decision denying benefits on May 27, 2011 (AR 19-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 22, 2009 through his date last insured of September 30, 2010 (AR 21). Second, the ALJ found that plaintiff has severe impairments of frozen shoulder syndrome and deep venous thrombosis (AR 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 33). Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint) or 4.11 (chronic venous insufficiency)(AR 23).

The ALJ decided at the fourth step that through the date last insured:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with only occasional climbing on ladders, ropes, or scaffolds, and frequent climbing on ramps or stairs, balancing, stooping, kneeling, crouching or crawling. He can perform no overhead work with either extremity and must avoid all workplace hazards such as unprotected heights and dangerous machinery.

(AR 23).

The ALJ found that through the date last insured, plaintiff was capable of performing his past relevant work as a construction worker, commercial/industrial cleaner, industrial truck driver, conveyor feeder/off-bearer, press operator, and housekeeper/cleaner (AR 25). The ALJ made these findings based, in part, on the testimony of the vocational expert (VE), who categorized plaintiff's past work as follows: general laborer/construction worker (medium to very heavy work); janitorial (medium work as performed); hi-low driver (light work); conveyor feeder/offbearer (light work); press operator (medium work); housekeeping cleaner (light to medium work) (AR 57-68). The ALJ found that this work did not require the performance of work-related activities precluded by

4

plaintiff's residual functional capacity (RFC) (AR 25). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 22, 2009 (the alleged onset date) through September 30, 2010(the date last insured) (AR 25).

**III. ANALYSIS**

Plaintiff raised three issues on appeal:

**A.    The ALJ made an erroneous credibility determination.**

Plaintiff contends that the ALJ improperly evaluated his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ performed a rather lengthy evaluation of plaintiff's credibility as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In his functional self-assessment of August 2009, the claimant described a very sedentary life. He requires a "couple" hours each morning for his medication to "take effect" before he can move about. He spends most of his day sitting or lying down, while watching TV. He indicated he could only walk a block, though he can drive 6-7 blocks. He felt that all of his motion and activities were limited from shoulder pain and diabetes, presumably because the diabetes causes general aching and fatigue. (Exhibit 6E) The claimant's sister, Lenda Ashley, confirmed that the claimant needs assistance with nearly every physical activity, though she felt he could walk 3-4 blocks (Exhibit 4E). In a functional self-assessment of November 2010, the claimant increased his walking distance to 4-5 blocks, though he still maintained he could do very little (Exhibit 11E). The claimant did not voice complaints to his doctors consistent with such severe problems, though when asked directly he apparently recounted very similar functional limitations (see, e.g., Exhibits 10F; 11F). He also testified at his hearing to severe limitations.
>
> It is difficult to find support in the medical evidence of record for physical problems of such a severe nature that they would cause these kinds of limitations. Although the DVT is documented, there were only two episodes of treatment in one leg, over the course of about four years. No doctor assigned functional limitations specifically in light of this diagnosis. The claimant was told to take medication, but apparently was not consistent in doing so (Exhibits 4F/1; 12F/15). Other than some swelling noted at the times of treatment, there do not appear to be any persistent symptoms except the claimant's complaints of pain. Even the complaints of pain in the lower extremities are not consistently noted in the record. If the claimant is not consistent in treating the problem and is not consistent in reporting problems to his doctors, I cannot see where this diagnosis requires any more functional limitations than as noted in the residual functional capacity.
>
> There is more objective evidence of a bilateral shoulder problem, but not enough to support the high level of pain and impairment reported by the claimant. X-ray's in May 2009 were only positive for "mild" degenerative changes bilaterally, with some mild calcific tendonitis in the right shoulder only (Exhibit 12F/21). Dr. Kitzsteiner diagnosed a "frozen shoulder" syndrome, but this appears to be based almost entirely on the claimant's subjective complaints that he cannot move his shoulders without significant pain. On other occasions when the claimant treated at hospitals for his DVT or a swollen finger, the shoulder problem was not mentioned

and no limitations of motion were noted (Exhibits 1F; 4F; 6F). The claimant was seen by consultative examiner Timothy Gates, D.O., in December 2009 (Exhibit 16F). Dr. Gates noted about 1/2 of the normal shoulder range of motion in two directions, but normal motion otherwise (ibid, at 3). The claimant had 5/5 strength in his upper extremities, a fact also noted at a hospital in November 2008 (Exhibit 4F/7). In short, the evidence is not supportive of severe or even significant pathology in the shoulder, though the claimant's complaints are.

I do not find the claimant's subjective complaints sufficiently credible to support a residual functional capacity greater than as outlined above. The claimant was not entirely honest with Dr. Baird about his history of drug abuse, indicating his recent incarceration was for selling, not using, drugs (Exhibit 17F/2). He told a treating doctor that he had used cocaine in early 2008 (Exhibit 6F/3). The claimant told Dr. Baird and Dr. Gates he had rheumatoid arthritis in his shoulders (Exhibits 16F/1; 17F/1). Dr. Kitzsteiner may have suggested that at one time, but her notes do not confirm that and neither does any other treatment record. The only time an inflammatory arthritis was mentioned was in regard to the claimant's finger, and it was no more than a suggested diagnosis at that time (Exhibit 6F/3-4). The claimant also described his ability to walk as being anywhere from one block to "at least 6 blocks" (Exhibit 10F/2). Alternatively, he told Dr. Gates he could walk for 20 minutes (Exhibit 16F/1). He also told Dr. Gates he could lift 10 pounds before he had pain (ibid), but testified he cannot even lift a gallon of milk. One also wonders how the claimant can turn the steering wheel when he drives (Exhibit 6E/4), but cannot even lift a pot or pan (Exhibit 4E/3). This is especially true considering the normal upper extremity strength noted on two separate occasions.

(AR 24-25).

Plaintiff contends that the ALJ's erred in evaluating his credibility because the ALJ "played doctor" by substituting his own lay opinion for those of medical providers. "[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir.2006). As one court explained:

> The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996).

Specifically, plaintiff contends that the ALJ ignored x-rays which demonstrated arthritis as well as plaintiff's testimony that he lacks the ability to drive. The ALJ noted that while plaintiff told Drs. Baird and Gates that he suffered from rheumatoid arthritis, there is no evidence of this condition. Plaintiff's treating physician, Kristen Kitzsteiner, M.D., stated in a report from July 22, 2009, that plaintiff's x-rays indicated arthritis in the shoulders (AR 414). However, there is no mention in the report, or in the doctor's other reports that plaintiff suffered from rheumatoid arthritis (AR 413-15, 419-22, 423-25, 498-502, 543-47). In a physical RFC assessment dated December 17, 2009, the non-examining DDS physician, Glen Douglass, M.D., found that plaintiff's allegation of rheumatoid arthritis was not supported by the medical evidence of record, with the shoulder x-rays of May 26, 2009 showing only mild degenerative joint disease (AR 388, 519).[3] The DDS physician found that plaintiff's statements of his disabling conditions were only partially credible (AR 519). A few months later, on August 6, 2009, plaintiff received a steroid injection in his right shoulder (AR 352, 429). It is unclear whether plaintiff received a benefit from this injection. Contrary to plaintiff's claim, the ALJ did not make his own independent medical findings. Based on this record, there is no compelling reason to discount the ALJ's credibility determination.

Plaintiff also contends that the ALJ made improper statements regarding his ability to drive. The relevant time period for plaintiff's claim is between the alleged disability onset date of May 22, 2009 and his date last insured of September 30, 2010. In documents filed in support of plaintiff's claim, specifically the August 31, 2009 function report and the February 10, 2010 disability report) (AR 205, 218), plaintiff stated that he drove during the relevant time period. At the administrative hearing held on May 6, 2011 (approximately seven months after plaintiff's date

---

[3] The Court notes that plaintiff refers to the May 2009 x-ray (AR 388) as an MRI. Plaintiff's Brief at pp. 2, 9.

8

last insured), plaintiff testified that he was not driving (AR 41). While plaintiff was no longer driving at that time, it is uncontested that he was driving during the relevant time period. Based on this record, the ALJ could properly consider whether plaintiff's ability to operate a motor vehicle was consistent with his alleged disabling conditions.

> **B.  The ALJ committed reversible error in failing to give proper weight to the opinions of plaintiff's treating physicians.**[4]
>
> **C.  The ALJ erroneously found work at Step Five.**

Plaintiff contends that he cannot perform light work contrary to the ALJ's RFC determination and the hypothetical question posed to the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability

---

[4] Plaintiff does not address his claim that the ALJ improperly weighed the opinions of this treating physicians. In this regard, the Court notes that the "Arguments" section of plaintiff's brief does not refer to this claim. Plaintiff's Brief at p. iii (docket no. 15). Nevertheless, the Court will address this claim to the extent it is relevant to the ALJ's review of plaintiff's claim at the fifth step of the sequential evaluation.

9

to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

The ALJ reviewed the evidence with respect to plaintiff's ability to perform the physical exertion requirements of work:

> As for the opinion evidence, there are multiple assessments of the claimant's functional status offered by Dr. Kitzsteiner (Exhibits 9F; 10F; 11F; 15F; 21F). The specific limitations in each of these assessments vary, from being able to sit, stand or walk up to 6 hours in an 8-hour workday (Exhibit 9F), to being able to stand or walk less than 2 hours (Exhibit 2IF), though the doctor always finds that the claimant cannot lift *anything*. These variations are not explained by any change in pathology or clinical findings. They are not consistent with some of the claimant's admissions. In fact, Dr. Kitzsteiner notes in several of these assessments that the conclusions are based on what the claimant told her at the time, not on any medical findings. Given that I do not find the claimant fully credible, I do not give any significant weight to Dr. Kitzsteiner's opinions.
>
> I give considerable weight to the State consultative evaluator, Dr. Glen Douglas [sic], M.D. (Exhibit 18F). Dr. Douglas' [sic] conclusions are consistent with the records of treatment and actual findings. They form the basis for the residual functional capacity.

(AR 25).

Plaintiff contends that the medical records and supporting testimony show that he is unable to work at the light exertional level, which is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).[5]

Here, the ALJ agreed with the opinion of Dr. Douglass, who determined that plaintiff could perform light work (AR 515). *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). Dr. Douglass' opinion was supported by the opinion of an examining consultant, Dr. Gates, who performed a number of clinical tests and found that plaintiff's "[m]otor strength is 5/5 throughout," that his "[s]ensation remains intact," and that "[r]eflexes were present and symmetrical" (AR 504-05).

In finding that plaintiff could perform light work, the ALJ discounted the opinion of plaintiff's treating physician, Dr. Kitzsteiner, who opined that plaintiff could never lift any weight. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial

---

[5] The Court notes that plaintiff's brief includes facts unrelated to his claim:

> Substantial evidence fails to support the ALJ's RFC findings. Plaintiff has undergone surgeries on her spine. Her imaging reports show significant and severe orthopedic problems in her cervical and lumbar spine, which cause her great pain. Plaintiff has tried many different treatment options without benefit. The ALJ's determination that Plaintiff is capable of lifting 20 pounds and walking 6 hours a day is far from what her medical records show she is able to do.

Plaintiff's Brief at p. 10.

11

evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ provided good reasons for not giving "any significant weight" to Dr. Kitzsteiner's blanket statement on five medical assessment forms that plaintiff could "never" lift any weight (AR 414, 421, 425, 500, 545). The ALJ noted the lack of medical findings to support this extreme limitation and that the opinions expressed on the forms appear to be based largely upon plaintiff's representations, a source that the ALJ found to be not fully credible. *See Buxton*, 246 F.3d at 773 ("the ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation") (internal quotation marks omitted). *See also, Teague v. Astrue*, 638 F.3d 611, 615-16 (8th Cir. 2011) (the ALJ could properly give little evidentiary weight to a treating physician's "check-off form" of functional limitations which "did

not cite clinical test results, observations or other objective findings").[6] Accordingly, plaintff's claim of error will be denied.

---

[6] Courts have increasingly questioned the evidentiary value of "multiple choice" or "check-off" opinion forms completing by treating physicians which are not unsupported by clinical records:

> It does not appear that the Sixth Circuit has directly addressed the weight afforded to check-box forms filled out by treating physicians, however, other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such "checkmark" or "multiple choice" forms when unaccompanied by explanation or unsupported by physician's notes. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir.2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir.2004) (upholding the ALJ's discounting of a treating physician's opinion in check-list form because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. . . or by objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065–66 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . where these so-called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal quotations and citation omitted); *Boley v. Astrue*, No. 11–10896, 2012 WL 680393, at *18 (E.D.Mich. Feb.10, 2012) ("Dr. Ulano merely checked off boxes on the form to indicate that [claimant] satisfied the requirements for listing § 12.05 'personality disorder' and almost satisfied the listing for § 12.04 'affective disorder'. . . [but] did not support any of these findings with any evidence in her treating record or any new observations from more recent treatments."); *Ahee v. Comm'r of Soc. Sec.*, No. 07–CV–12071, 2008 WL 4377652, at *4 (E.D.Mich. Sept.22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

*Doyle v. Commissioner of Social Security*, No. 2:11-cv-371, 2012 WL 4829434 at *9 (Report and Recommendation) (Sept. 12, 2012), adopted 2012 WL 4829213 (Oct. 10, 2012 E.D. Tenn.).

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g), and a judgment consistent with this opinion will be issued forthwith.


Dated: March 19, 2014                    /s/ Hugh W. Brenneman, Jr.
                                         HUGH W. BRENNEMAN, JR.
                                         United States Magistrate Judge